IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION,

    Petitioner,

  v.

PACIFIC MARITIME ASSOCIATION,

    Respondent.
_____/

No. C 11-05222 WHA

**ORDER POSTPONING MOTION FOR ENFORCEMENT OF LABOR ARBITRATION SUBPOENA**

## INTRODUCTION

Petitioner International Longshore and Warehouse Union moves to enforce a labor arbitration subpoena. For the reasons set forth below, this motion will be postponed until the arbitrator has ruled on respondent's objections.

## STATEMENT

Petitioner ILWU represents longshore workers, mechanics, and marine clerks employed by waterfront companies. Respondent Pacific Maritime Association is a multi-employer collective-bargaining association whose member-companies include stevedoring and shipping companies that employ longshore workers. PMA represents the employers in collective-bargaining negotiations with ILWU and in the administration of the resulting labor agreements (Compl. ¶¶ 2, 4).

ILWU and PMA are parties to a single collective-bargaining agreement that covers all commercial ports along the West Coast known as the Pacific Coast Clerks Contract Document.

1  The PCCCD governs the wages, hours, and terms and conditions of employment for marine
2  clerks employed by PMA member companies. It establishes a multi-step grievance and
3  arbitration mechanism for the resolution of contract disputes. Such disputes are first considered
4  by the Joint Port Labor Relations Committee, and, if they are not resolved at that level, are
5  referred to an area arbitrator (*id.* at ¶¶ 5, 12–13). Area arbitrators' decisions can be appealed to
6  the Coast Labor Relations Committee, a joint labor-management committee made up of
7  representatives from both ILWU and PMA. Decisions can then be appealed to a coast arbitrator.
8  The decisions of coast arbitrators are final and cannot be appealed (Sundet Decl. ¶¶ 1, 5–6).

9  A provision of the PCCCD added in 2002 "seeks to preserve marine clerk work and
10 jurisdiction in the face of present and new technologies." The disputes that arise under this
11 provision "generally concern non-bargaining personnel and third party companies performing
12 marine clerk work." One such dispute arose between ILWU and PMA involving the use of
13 radio-frequency identification tags by truckers. RFID tags were issued to trucking companies
14 by a company called PierPass, and are used to track trucking movements at marine terminals.
15 Scanners at the marine terminal electronically read data on truckers' RFID tags and
16 automatically load electronic information. This data is maintained by eModal, a non-union
17 company. Before the advent of RFID tags, such data previously were manually inputted by
18 marine clerks (Compl. ¶¶ 19–20).

19 The dispute about RFID tags continued to the point where it was appealed to a coast
20 arbitrator. In November 2009, Coast Arbitrator John Kagel issued an opinion on whether PMA
21 and PMA company members violated the PCCCD "by allowing non-bargaining unit personnel
22 to input [RFID] tags for outside truckers into a database." Arbitrator Kagel concluded that there
23 was inconclusive evidence to decide the issue, and remanded it to the CLRC for a discussion
24 between the presidents of ILWU and PMA. He retained jurisdiction over the dispute in the event
25 the parties were unable to resolve the issue (*id.* at ¶ 20).

26 In December 2010, CLRC Committeemen Roy Ortiz, Jr. and Leal Sundet wrote a letter
27 to Richard Marzano, the Coast Director of Contract Administration and Arbitration for PMA.
28 The letter requested documentation relating to contracts between PMA, eModal, and PierPass.

Marzano provided no response to the request.  In March 2011, Ortiz and Sundet wrote another letter to Marzano against requesting the same documentation and information.  In May 2011, having again received no response, a third letter was sent.  A fourth letter sent in July 2011 reiterated the document requests from the earlier letters and requested additional documentation regarding eModal (*id.* at ¶¶ 21–24; Sundet Decl. ¶¶ 9–12).

In September 2011, following a hearing on another matter, Arbitrator Kagel and representatives from ILWU and PMA discussed having Arbitrator Kagel issue a subpoena directing production of the documents.  PMA representatives raised no objections at that time.  On September 14, Arbitrator Kagel issued a subpoena ordering PMA to produce the documents requested in ILWU's four letters (Sundet Decl. ¶¶ 13–14).  To date, the documents requested have not been provided.

Petitioner now asks this Court to enforce the subpoena issued by Arbitrator Kagel.  This order follows full briefing and a hearing.

**ANALYSIS**

Petitioner argues that this Court has jurisdiction to enforce the subpoena under Section 301 of the Labor Management Relations Act.  Respondent argues that it is improper for the subpoena to be enforced at this time because it objected to several requests for documentation, and Arbitrator Kagel has not yet ruled on these objections.  Each issue is considered in turn.

1. **SUBJECT-MATTER JURISDICTION.**

The United States Supreme Court held that Section 301 of the LMRA "authorizes federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957).

Whether federal common law allows district courts to enforce arbitration subpoenas has not yet been decided in Ninth Circuit case law.  The only two courts of appeal to decide the issue have found that district courts have that power.  The United States Court of Appeals for

3

the Sixth Circuit has held that district courts have subject-matter jurisdiction to enforce arbitration subpoenas. *Am. Fed'n of Television and Radio Artists, AFL-CIO v. WJBK-TV*, 164 F.3d 1004, 1008 (6th Cir. 1999). Similarly, the United States Court of Appeals for the Seventh Circuit has held that federal common law under Section 301 creates a cause of action by which a party to a collective bargaining agreement can enforce an arbitration subpoena against a non-signatory of the agreement. *Teamsters Nat'l Auto. Transps. Indus. Negotiating Comm. v. Troha*, 328 F.3d 325, 331 (7th Cir. 2003). The only courts of appeals to decide the issue have thus found district courts do have subject-matter jurisdiction to enforce arbitration subpoenas. This order adopts this view. That, however, is only the beginning of the problem.

### 2. RESPONDENT'S OBJECTIONS TO THE SUBPOENAS.

The practical problem is that, while this Court has subject-matter jurisdiction, the arbitration subpoena involves a proceeding to which this Court is a total stranger. The subpoena was not one of our district court subpoenas. It was issued by the arbitrator. The arbitrator has not yet spoken on the extent to which the subpoena should be enforced.

The parties dispute the validity of respondent's objections. The objections were voiced in an email sent from Marzano to Kirsten Donovan, an employee of ILWU. Another email address was copied on this email. Respondent now alleges that it was the email for Arbitrator Kagel. The body of the email read as follows (Marzano Exh. J):

> This is to notify the Union that all affected member companies, except TraPac, have provided theri [sic] input to the information and document requests in Coast Arbitrator Kagel's September 14, 2011 subpoena. TraPac has provided its input tot [sic] he [sic] questions in the first letter attached to the subpoena but not to the last letter. This appears to be due to a misunderstanding and we are working on collecting the rest of its input.
>
> So far, we've found the following objections to the requests. Requests for the names and salaries of non-bargaining unit employees invades their privacy. Facility Security Plans are Sensitive Securtiy [sic] Information under 49 C.F.R. 1520.5(b)(1)(ii), and 49 C.F.R. 1520.9 bars each Employer from disclosing SSI to the Union.
>
> Finally, this is notify the Union that we are consolidating the affected member companies' input and expect to produce their responses no later than September 28, 2011.

4

Petitioner argues that the purpose of the email was to update ILWU of PMA's status in complying with the subpoena and that respondent did not properly raise objections because Arbitrator Kagel would have no reason to know that the objections were directed at him. Furthermore, petitioner argues that respondent failed to request any particular remedy.

The first and third paragraphs appear to have be directed at ILWU, and stated the status of PMA's compliance with the subpoena. The third paragraph also made promises — which were not kept — to produce certain documents by late September 2011. The second paragraph, however, clearly alerted ILWU to objections PMA had with certain requests.

Neither *WJBK-TV* nor *Troha* clarified the role of a district court in resolving objections to arbitration subpoenas. Two district court decisions, while not binding, are instructive on the issue. In the Second Circuit, a district court held that it had the authority to enforce a labor subpoena, but declined to do so until the arbitrator was given the opportunity to consider the relevance of the requested information and to rule on standing objections. *Wilkes-Barre Pub. Co. v. Newspaper Guild of Wilkes-Barre*, 559 F. Supp. 875, 882-83 (W.D. Pa. 1982). Similarly, in the Third Circuit, a district court held that it is for the arbitrator, not the district court, to determine if documents requested in a subpoena are privileged. *Walt Disney Co. v. Nat'l Assoc. of Broad. Emp. & Technicians*, No. 10 Civ. 5982, 2010 WL 3563110, at *4 (S.D.N.Y. Sept. 10, 2010).

This Court agrees that it is the role of the arbitrator first to rule on objections to the subpoena that *he* issued. In two of the letters sent to Marzano, petitioner threatened to "move to arbitrate the violation of Section VI(B)(5) with the Coast Arbitrator" if certain deadlines for document production were not met (Sundet Decl. Exh. D–E). Petitioner fails to explain why it never followed through on those threats and instead chose to seek remedy here. The proper and efficient procedure is for the arbitrator to first rule on the objections and to fashion an order compelling discovery framed for the needs of the arbitration and then for the district court to enforce that ruling.

5

**CONCLUSION**

For the reasons outlined above, petitioner's petition to enforce the subpoena will be postponed pending a period sufficient to allow respondent to move the arbitrator to rule on the objections. Respondent says this can be done within a week. This order gives two weeks. This case will be set for further hearing at **8:00 AM** on **DECEMBER 22, 2011**. Respondent has until **NOON** on **MONDAY, DECEMBER 12,** to produce the documents to which there were no objections. Respondent must raise any objections to the arbitrator by the end of today.

**IT IS SO ORDERED.**

Dated: December 8, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6